```
         IN THE UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF ARKANSAS
                 FAYETTEVILLE DIVISION
```

MARY JANE CAMPBELL                                             PLAINTIFF

       v.                Civil No. 06-5154

DAVOL, INC., C.R. BARD, INC.,
SURGICAL SENSE, INC., and
WCO MEDICAL PRODUCTS
CORPORATION (formerly JOHN DOE I)                             DEFENDANTS

## MEMORANDUM OPINION AND ORDER

    Now on this 17th day of August, 2009, comes on for consideration **Defendants' Motion for Summary Judgment** (document #62), which was filed by separate defendants C.R. Bard, Inc. and Davol, Inc. Having considered the pleadings of the parties, the Court, being well and sufficiently advised, finds and orders as follows:

    1.   The plaintiff originally brought this action against the defendants in the Circuit Court of Benton County, Arkansas on July 28, 2006. The case was removed to this Court on August 22, 2006. The case was later transferred to the Judicial Panel on Multidistrict Litigation in June of 2007, and, in February of 2008 was remanded to this Court. The plaintiff's Second Amended Complaint (document #58) asserts claims against Davol, Inc., C.R. Bard, Inc., Surgical Sense, Inc., and WCO Medical Products Corporation. The plaintiff's complaint stems from the placement of a Kugel Hernia Patch in her stomach following breast reconstruction.

2. Separate defendants C.R. Bard, Inc. (hereinafter "Bard") and Davol, Inc. (hereinafter "Davol") now move for summary judgment. The plaintiff opposes the defendants' motion.

3. The plaintiff, in her response to the motion, requested that she be allowed to conduct discovery on the issues presented by the instant motion before the Court's ruling. The Court, through its Order of October 21, 2008 (document #85) allowed the plaintiff to conduct discovery with respect to specific issues. Discovery is now complete and the parties have provided the Court with additional briefing. The plaintiff opposes the defendants' motion on two main bases: that Bard/Davol is a mere continuation of the selling corporation; and that Bard/Davol had an independent duty to warn Surgical Sense's customers regarding alleged defects in Surgical Sense products.

4. The standard to be applied to a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure and provides for the entry of summary judgment on a claim

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

F.R.Civ.P. 56(c); *see also* Carroll v. Pfeffer, 262 F.3d 847 (8th Cir. 2001); Barge v. Anheuser-Busch, Inc., 87 F.3d 256 (8th Cir. 1996). Summary judgment is to be granted only where the evidence

is such that no reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Accordingly, all evidence must be viewed in the light "most favorable to the non-moving party." F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997); *see also* Bailey v. United States Postal Service, 208 F.3d 652, 654 (8th Cir. 2000).

Where a movant makes and properly supports a motion for summary judgment, the opposing party may not rest upon the allegations or denials of its pleadings; rather, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 256. The non-moving party must "make a sufficient showing on every essential element of its case for which it has the burden of proof at trial." Wilson v. Southwestern Bell Tel. Co., 55 F.3d 399, 405 (8th Cir. 1995).

 5. For the purpose of considering the motion for summary judgment and based upon the pleadings submitted by the parties, the Court believes the following material undisputed facts appear:

* In 1999, Mary Campbell, the plaintiff, had breast cancer and underwent a right mastectomy.

* On May 21, 1999, Campbell had surgery for a breast reconstruction procedure. During the procedure, Campbell had a Kugel Hernia Patch implanted into her abdomen.

* The Kugel Hernia Patch was manufactured and distributed

by Surgical Sense.

\*   In January of 2000, Surgical Sense entered into an Asset Purchase Agreement with Bard ASDI, Inc. ("Bard") wherein Surgical Sense sold substantially all of its assets to Bard, including its hernia-repair product line. After the sale, Surgical Sense ceased doing business and commenced the wind-up of its business with the intention of ultimately liquidating and dissolving.

\*   As a part of the Asset Purchase Agreement with Bard, Surgical Sense agreed to change its name.

\*   On or about January 28, 2000, Surgical Sense filed Articles of Amendment with the Texas Secretary of State, officially changing its name to WCO Medical Products Corporation.

\*   At all times, Surgical Sense and WCO were the same legal entity; WCO was simply the entity formerly known as Surgical Sense.

\*   WCO maintained the same corporate officers and directors as Surgical Sense.

\*   In April of 2002, WCO voluntarily dissolved. On April 8, 2002, WCO, the entity formerly known as Surgical Sense, filed Articles of Dissolution with the Texas Secretary of State.

\*   After January of 2000, WCO ceased operations and conducted no further business other than paying off its liabilities and managing the proceeds from the sale of its business.

\*   Bard paid $26,000,000 in cash for the Kugel Hernia Patch product line and there was no transfer of stock from either company.

\*   The Asset Purchase Agreement between Surgical Sense and Bard states: "[Bard] is not assuming . . . any obligations or liabilities specifically described in Section 1.4 hereof or any of the following obligations and liabilities . . . {ii} any obligation or liability of the [Surgical Sense] resulting from any claim, legal or equitable action, proceeding or investigation pertaining or relating to or arising from circumstances, events, conditions, acts or omissions occurring or existing on or prior to the Closing Date."

\*   Campbell filed her complaint in the instant matter in the Circuit Court of Benton County, Arkansas on July 28, 2006. The instant matter was removed to this Court on August 22, 2006.

6.   In this case, the plaintiff argues that Bard and Davol should be liable for damages caused by a hernia patch manufactured by Surgical Sense because Bard purchased the hernia patch product line from Surgical Sense and because Davol is, allegedly, a wholly owned subsidiary of Bard.  It is undisputed that the specific hernia patch was both manufactured and implanted into the plaintiff before Bard's purchase of the product line.

In support of their motion for summary judgment, Bard and Davol argue that it is the law of both the state of Arkansas and

the majority of jurisdictions that "a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation." Swayze v. A.O. Smith Corp., 694 F.Supp. 619, 620 (E.D. Ark. 1988). This general rule is, however, subject to the following exceptions:

(1) where the transferee assumes the debts and obligations of the transferor by express or implied agreement;

(2) where these is a consolidation or merger of the two corporations;

(3) where the transaction is fraudulent or lacking in good faith; and

(4) where the purchasing corporation is a mere continuation of the selling corporation. Id. *See also* Reed v. Armstrong Cork Co., 577 F.Supp. 246, 247-48 (E.D. Ark. 1983); Good v. Ferguson & Wheeler Land, Lumber & Handle Co., 153 S.W. 1107 (Ark. 1913).

7.   The plaintiff claims Bard and Davol should be held liable because the entities operated as a "mere continuation of the selling corporation."  In support of her argument, the plaintiff states:

*   Bard/Davol purchased all of the assets of the business of Surgical Sense;

*   Bard/Davol continued to sell a Hernia Patch Product with the same name, the Kugel Hernia Patch, that Surgical Sense has sold;

-6-

\*   Bard/Davol continued to manufacture the Kugel hernia patch under the same patent;

\*   the patch sold by Bard/Davol has the same size dimensions and appearance as the patch sold by Surgical Sense;

\*   Bard/Davol continued to sell the hernia patch to the same customers;

\*   some employees of Surgical Sense worked for Bard/Davol after the purchase at least for a short period of time, particularly during the transition period;

\*   Bard/Davol used the same surgeons/trainers and continued to pay Dr. Kugel his royalty fee to use his patent and continue with the product;

\*   the customer list was transferred to Bard during the purchase of the Kugel Hernia Product line;

\*   there was no business conduct by Surgical Sense after the sale or after the name of Surgical Sense was changed to WCO;

\*   Bard/Davol never had a lapse or interruption in business when they purchased the hernia product line; and,

\*   when the hernia product line was sold to Bard/Davol, Surgical Sense was required to maintain a liability policy of insurance for two years after the sale of the business. Bard/Davol were named as additional insureds under the policy.

8.   It is undisputed that the Asset Purchase Agreement between Surgical Sense and Bard expressly disclaims assumption of

Surgical Sense's liability; additionally, Surgical Sense agreed to indemnify Bard for any products liability actions.  It therefore clearly follows that, under Arkansas law, Bard/Davol would not "succeed to the liabilities" of Surgical Sense unless they fall under one of the exceptions – here allegedly being a mere continuation of the business of the selling corporation.

Bard/Davol argue, and the Court agrees, that the facts of this case do not meet the criteria required for the application of the "continuation of business" exception. *See* Swayze v. A.O. Smith Corp., 694 F.Supp. 619, 622 (E.D. Ark. 1988); Reed v. Armstrong Cork Co., 577 F.Supp. 246 (E.D. Ark. 1983).  "The majority of courts considering the 'mere continuation' exception emphasize a common identity of officers, directors, and stock between the selling and purchasing corporations." Swayze, 694 F.Supp at 622-23.  Although, like in Swayze, Bard/Davol did employ some Surgical Sense employees at least during the transition period just after the execution of the Asset Purchase Agreement, those employees were largely sales representatives, and there is no evidence they held managerial positions. Id. *Compare* Ford Motor Co. v. Nuckolls, 894 S.W.2d 897 (Ark. 1995)(finding proof of mere continuation sufficient to present evidence to jury where there was extensive proof of continuation and where there was express assumption of liability).

9.    With respect to the failure to warn claim, the plaintiff argues that the Court should recognize and adopt a post-sale failure to warn claim discussed in the Restatement (Third) of Torts.  Neither

the research of the parties, nor the research of the court has revealed evidence of the adoption of this theory by any court applying Arkansas law.  Further, the Court finds that the facts of this case do not support a failure to warn claim under the Restatement (Third) of Torts, if adopted by Arkansas law.[1]

**IT IS, THEREFORE, ORDERED** that **Defendants' Motion for Summary Judgment** (document #62), should be, and it hereby is **granted.**

**IT IS FURTHER ORDERED** that plaintiff's complaint against Bard and Davol is **dismissed.**

**IT IS SO ORDERED.**

       Jimm Larry Hendren
/s/ Jimm Larry Hendren
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE

---

[1] Section 13 of the Restatement (Third) of Torts outlines liability under the failure to warn theory as being applicable if: 1) the successor undertakes or agrees to provide services for maintenance or repair of the product or enters into a similar relationship with purchasers or the predecessor's products giving rise to actual or potential economic advantage to the successor; and 2) a reasonable person in the position of the successor would provide the warning.